DONALD E. AND MAUREEN H. MOSACK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mosack v. Commissioner
Docket No. 2394-87
United States Tax Court
T.C. Memo 1990-175; 1990 Tax Ct. Memo LEXIS 188; 59 T.C.M. (CCH) 309; T.C.M. (RIA) 90175; April 4, 1990
Donald E. Mosack, pro se. Jonathon Decator, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: By notice of deficiency dated December 4, 1986, respondent determined *189 the following deficiency in and additions to petitioners' 1982 Federal income tax: Additions to tax
Deficiency
Sec. 6653(a) [1]
Sec. 6653(a)(2)
Sec. 6659
$ 15,276.00
$ 764.00 * $ 4,583.00
Respondent further determined that all of petitioners' underpayment of tax for 1982 was a substantial underpayment attributable to a tax-motivated transaction under section 6621(c) (formerly section 6621(d)). Petitioners have conceded the entire deficiency and the remaining issues to be decided are: (1) whether petitioners' underpayment of tax for 1982 was due to negligence or intentional disregard of the rules and regulations; (2) whether, and to what extent, petitioners' underpayments of tax for 1982 were attributable to a valuation overstatement; and (3) whether, and to what extent, petitioners' underpayments of tax for 1982 were substantial underpayments attributable to tax-motivated transactions. FINDINGS OF FACT Some of the *190 facts of this case have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. Petitioners resided in Palatine, Illinois, when they filed their petition. Petitioners filed a joint Federal income tax return for 1982. Petitioner (all references hereafter to petitioner shall be to Donald E. Mosack) received a degree in business, with a minor in managerial accounting, from the University of Minnesota in 1957. He then worked for International Business Machines (IBM). Petitioner, who was also a trained Air Force pilot, flew with the National Guard until 1964 when he began flying for United Airlines, Inc. (United). During 1982, petitioner worked full-time as a pilot for United and earned wages in the amount of $ 124,552.52. Petitioner's duties during the year at issue also included being a flight manager. As such, he was responsible for supervising 180 full-time United pilots. In November 1982, petitioner became aware of a stress management program produced by Holland Energy Resources (HER). Petitioner requested information on the program from HER. While in Dallas, Texas, on a flight *191 for United, petitioner visited the principals of HER, Larry and Gaile Holland and discussed HER's stress management program with them. He also sent the promotional materials to Paul T. Weiss (Weiss), a CPA who is a friend of petitioner, and asked Weiss for his advice on the program. The cover of the promotional materials highlights the following features of the Stress Management and Bioenergy Computer Multi Media Hardware/Software Lease Program (Lifenergy program): No Notes 400% Write off Non Security ITC & Depreciation The promotional brochure begins its introduction with the following invitation: Holland Energy Resources invites the taxpayer to participate in a unique and dynamic "Stress Management and Bioenergy" Computer and Multi-Media Hardware/Software Tax Shelter for 1982! The 4 to 1 lease program is a combination Computer Hardware/Software with Audio and Video Hardware/Software. The brochure then explains the structure of the program. First the "taxpayer/leaseholder" pays $ 9,000 for a single program master. This payment is prepaid rent for the entire term of the lease, from 1982-1987. The leaseholder then receives a computer hardware/software program that *192 cost HER $ 150,000. The leaseholder is then entitled to the $ 15,000 investment tax credit for the equipment passed through to him from HER. In addition to the $ 9,000 prepaid rent, the leaseholder pays HER, as additional rent, 50 percent of any distribution royalties from sales of the computer software during the lease term. The leaseholder is to make all due efforts to distribute and sell the software package. On December 14, 1982, petitioner, as lessee, entered into an equipment lease agreement with HER. Petitioner paid HER $ 9,000 as prepaid rental. The lease term was for 5 years. Sometime at the end of 1982 and/or the beginning of 1983, petitioner received the following equipment from HER: Apple II plus computer (with monitor), Toshiba (beta-compatible) videocassette player/recorder, Lifenergy computer software program (including instruction manual), and various Lifenergy audio and video tapes. The value of all this equipment was $ 32,400. Petitioner was disappointed with the Lifenergy program that he received and felt he would not be able to sell it. He called the Hollands in Dallas and they assured him that they were revising the program and that he would soon receive *193 a new program. Petitioner was just as disappointed with the new program when he received it. During this time petitioner also entered into a marketing agreement with The Profit Center, a company recommended by HER, to help him market the Lifenergy program In 1983, petitioner paid Foy McClung, the Profit Center's president, $ 600 in connection with promotion and marketing services on behalf of Lifenergy products. Petitioner has made no retail sales of any Lifenergy products (audio tapes, video tapes or computer software), or any parts thereof. On their 1982 Federal income tax return, petitioners claimed an investment credit of $ 15,278 for new property with a basis of $ 152,778. Respondent disallowed petitioners' claimed investment credit in its entirety. OPINION Petitioners concede that they were not entitled to the investment credit claimed on their 1982 return. Accordingly, we focus on the additions to tax and increased interest rate determined by respondent. Secs. 6653(a)(1) and 6653(a)(2) Additions to Tax for Negligence
Section 6653(a)(1) provides for an addition to tax of 5 percent of any underpayment if any part of the underpayment is due to negligence *194 or the intentional disregard of rules or regulations. Section 6653(a)(2) further provides that an amount equal to 50 percent of the interest on the underpayment attributable to the negligence or intentional disregard shall be added to the tax. Negligence under sections 6653(a)(1) and 6653(a)(2) is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. . Respondent's determination of negligence is presumed correct, and petitioners bear the burden of proving otherwise. , affg. a Memorandum Opinion of this Court; ; ; Rule 142. Petitioners argue that petitioner adequately investigated the Lifenergy program before investing in it, and that therefore, they were not negligent. We disagree. Petitioner based his decision on HER's promotional materials and his discussions with the Hollands, the promoters of HER. Petitioner also had his friend, a CPA, review the *195 promotional materials. These efforts do not constitute the exercise of due care. [2] Petitioner's efforts, however, were not as exhaustive as petitioners assert. Petitioner did not attempt to examine anything more than the promotional materials. Petitioner's friend, Weiss, reviewed the promotional materials overnight and did not render a written opinion at the time. Nor did he charge a fee for what appears to have been a favor for petitioner. In addition, when petitioner wanted to discuss the program with the Hollands, he merely arranged to work a United flight to Dallas. Moreover, the structure of the investment should have alerted petitioner, who has a business background, that something was amiss. For a $ 9,000 investment, petitioner was supposed to be entitled to a $ 15,278 investment credit that would offset a corresponding amount of tax. We find untenable petitioner's explanation at *196 trial that he made the decision to invest after deciding to undertake a "calculated risk." The investment as structured yielded petitioners an immediate windfall of over $ 6,000. Furthermore, we dismiss petitioners' arguments that petitioner invested in the Lifenergy program with the object of making a profit, but was instead mislead as to the quality of the program. To the contrary, the promotional materials plainly identify the Lifenergy program as a tax shelter and are replete with disclaimers and caveats. Accordingly, we hold that petitioners' 1982 underpayment was due to negligence, and we sustain respondent's determinations. Sec. 6659 Addition to Tax for Valuation Overstatement
Section 6659 provides for an addition to tax on an underpayment of tax attributable to a valuation overstatement. A valuation overstatement exists if the value of the property (or adjusted basis) claimed on a return is at least 150 percent greater than the amount determined to be the correct value (or adjusted basis) of the property. Sec. 6659(c). Petitioners claimed an investment tax credit based on a $ 152,778 value of the package they received, which consisted of the computer hardware, *197 software, audio tapes, and video tapes. The parties have stipulated, however, that the value of this equipment was $ 32,400. Because $ 152,778 is more than 150 percent of$ 32,400, the amount determined to be the correct value, petitioners are liable for the addition to tax for a valuation overstatement. Furthermore, since the valuation claimed exceeded 250 percent of the value determined to be correct, the applicable percentage to be used in computing the amount of the addition to the tax under section 6659(b) is 30 percent. See . Sec. 6621(c) Tax-Motivated Transactions
Section 6621(c) provides for an increase in the rate of interest payable under section 6601 with respect to a "substantial underpayment" (defined as an underpayment in excess of $ 1,000) attributable to a tax-motivated transaction. Included in the definition of a tax-motivated transaction is any valuation understatement under section 6659(c). Sec. 6621(c)(3)(A)(i). Therefore, since we have held that petitioners' underpayment for 1982 was attributable to a valuation overstatement under section 6659(c), petitioners are liable for the additional *198 interest pursuant to section 6621(c). (Additional interest applies only after December 31, 1984, and applies notwithstanding that the transaction was entered into prior to that date. , affd. per curiam without published opinion .) In light of the foregoing, Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended and in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure. * 50% of interest on $ 15,276.↩
2. We find petitioner's actions to be indistinguishable from those of the taxpayer in , in which we held the taxpayer negligent with respect to deductions and investment credits claimed with respect to the Lifenergy program.↩